UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSEPH TODESCO, ET AL.                    CIVIL ACTION

VERSUS                                    NO. 16-16736

GLENDA WAINRIGHT, ET AL.                  SECTION "B"(3)

ORDER AND REASONS

Before the Court is "Plaintiffs' Motion for Remand and Attorney's Fees." Rec. Doc. 8. After an extension, Defendants timely filed an opposition memorandum. Rec. Doc. 18. Plaintiffs then requested, and were granted, leave to file a reply memorandum. Rec. Doc. 23. Defendants also requested leave to file a supplemental memorandum. Rec. Doc. 24. For the reasons discussed below,

**IT IS ORDERED** that the motion to remand (Rec. Doc. 8) is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion for leave (Rec. Doc. 24) is **DISMISSED AS MOOT**.

I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of a family business dispute. On August 13, 1990, Plaintiff Joseph Todesco ("Todesco") filed articles of incorporation in Louisiana to establish Haelan Products, Inc. ("Haelan"), a company focused on developing fermented soy products for health purposes. Rec. Doc. 3-1 at 3, 5. In 1991, Todesco hired his father-in-law, Walter Wainright ("Wainright"), as a salesman.

1

*Id.* at 3. In 2003, Wainright requested a greater role in the company and his daughter/Todesco's wife, Lesly Todesco, encouraged Todesco to give her parents, Walter and Glenda Wainright, a share in the company. *Id.* On November 11, 2003, the Todescos agreed to "gift" 50% of the company's shares to the Wainrights. *Id.* at 4. Eventually, Wainright became an officer or director of the company. *Id.* at 5.

When Wainright died on August 20, 2013, the Todescos discovered that Wainright systematically diverted company products, research, and profits for his own personal gain. Rec. Doc. 3-1 at 5. According to Plaintiffs, Wainright created corporations that he used to sell Haelan products to individuals in exchange for cash and to communicate with Haelan's distributors and third-party researchers. *Id.* at 7. For example, Wainright purportedly sold forty-three (43) cases of Haelan products to Paul Emerson and five (5) cases to Robert Brown in exchange for cash that was not given to Haelan. *Id.* at 12-13. Wainright subsequently agreed to sell fifty (50) cases to Brown. *Id.* at 14. When Wainright failed to deliver the cases, he used Haelan proceeds to repay Brown part of his purchase price. *Id.*

Further, Wainright incorporated the Vienna Stress Relief Clinic ("VSRC") on September 17, 2011 and purportedly hired researchers to publish articles under VSRC's name, using research and product information developed by Haelen. Rec. Doc. 3-1 at 6-

7. Similarly, Haelan Research Foundation ("HRF"), Wainright Haelan, L.L.C., Haelan Products International, Inc., and HPA, Inc. were companies created by Wainright to misappropriate Haelan's corporate funds and products. *Id.* at 9, 11. For example, on September 1, 2009, through Todesco's efforts, Dr. Anca Gocan agreed to conduct a study using a Haelan product. *Id.* at 6. However, on September 30, 2009, "unbeknownst to Haelan," Wainright informed Dr. Gocan that Haelan was withdrawing its support, but that HRF would like to participate. *Id.* at 8. When funds and research from Haelan were then sent to Dr. Gocan, Wainright convinced Dr. Gocan that they were coming from HRF. *Id.* On December 8, 2011, Wainright, Dr. Gocan, and Dr. Gocan's peer, Dr. Uwe Rohr, applied for a United States patent for a fermented soy formulation, FSWW08, which Plaintiffs maintain is the product developed by Haelan and used in the study conducted by Dr. Gocan. *Id.* at 10. On July 15, 2002, Wainright allegedly used Haelan Products International, Inc. to enter into an agreement with Beso Biological Research, Inc., Haelan's primary manufacturer, giving Wainright the exclusive right to sell fermented soy products. *Id.* at 12. Haelan discovered this scheme and forced Wainright to assign the agreement to Haelan on December 18, 2003. *Id.*[1]

---

[1] Wainright also purportedly used Haelan's corporate credit card to take cash advances. Rec. Doc. 3-1 at 15. At the time he died, the unpaid advances totaled $134,500. *Id.* Haelan continues to pay off all of these debts. *Id.*

At one point, Haelan provided funds to Aoqili Cosmetics, Inc., a company owned by Todesco, to purchase 300,000 bars of specialty soap. Rec. Doc. 3-1 at 14. Wainright then secretly stored the soap in a warehouse in Washington State, sold the soap, and kept the proceeds for himself. *Id.* After Wainright died, the owner of the storage unit filed suit in Whatcom County Superior Court to determine ownership of the remaining soap. *Id.* at 15.

According to Plaintiffs, by competing directly with Haelan, using his Haelan resources, and undermining Haelan's efforts, Wainright breached his fiduciary duty to Haelan and its shareholders under Louisiana Revised Statute § 12:91. Rec. Doc. 3-1 at 7, 16. Consequently, on June 18, 2014, the Todescos and Haelan filed suit in the 24th Judicial District Court for Jefferson Parish against the succession of Walter Wainright, Glenda Wainright, HRF, Wainright Haelan, L.L.C., and VSRC. *Id.* at 2-3. After a hearing on September 26, 2016, the court granted Plaintiffs' exception of no right of action by written judgment signed on October 27, 2016. Rec. Doc. 3-2 at 70.

On December 9, 2016, Defendants removed the matter to this Court by filing a lengthy notice of removal containing numerous allegations of misconduct. Rec. Doc. 3. They claim that the "case became removable . . . when the state court ruled that the Wainrights were dispossessed *without notice* of their 50% shareholder interest in Haelan by an *undisclosed and never served*

4

Washington State lawsuit." *Id.* at ¶¶ 6-7 (emphasis in original). According to Defendants, securities fraud and due process issues predominate, but this Court "would have exclusive jurisdiction if this case was filed anew pursuant to § 27 of the 1934 Exchange Act . . . 15 U.S.C. § 78(a)aa." *Id.* at ¶ 9.

The remainder of the notice of removal contains largely unsubstantiated allegations of unethical conduct and due process violations. Defendants explain that when the Whatcom County court determined that the owner of the storage unit was entitled to rent from Wainright's estate and that Todesco owned the soap, Todesco and the owner of the storage unit entered into an agreement whereby the former would pay $15,000.00 to the latter in exchange for an assignment of the latter's judgment creditor rights against Wainright's estate. Rec. Doc. 3 at ¶¶ 16, 19. A judgment totaling $87,323.26 was then entered against Wainright's estate. *Id.* at ¶¶ 22, 28. On November 24, 2015, proceedings to execute the judgment were started in King County, Washington. Rec. Doc. 3 at ¶ 29. The sheriff was instructed to seize the personal property of Glenda Wainright, as the representative of her husband's estate, including the Haelan stock certificates issued to the Wainrights more than a decade earlier. *Id.* at ¶ 31. According to Defendants, though, the sheriff has no record of the writ, did not serve it on any Defendant, and took no steps to execute a seizure and sale. *Id.* at ¶ 34.

Defendants now claim that Glenda Wainright was not provided notice of the sale of litigious rights until around September 26, 2016 (*id.* at ¶ 25) and that the failure to provide notice raises "fundamental due process issues under *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983) . . . ." (*id.* at ¶ 36).[2] They maintain that Louisiana Civil Code article 2652 prohibits the sale of litigious rights (*id.* at ¶ 26) and that the assignment is void under 15 U.S.C. § 78cc(b) (*id.* at ¶¶ 49-50).[3] Ultimately, though, they ask this Court to declare that Glenda Wainright can satisfy her debt by depositing $15,000.00, the amount of the assignment, plus interest in the Court's registry. *Id.* at ¶ 81.[4] They also

---

[2] Defendants also argue that the stock certificates were never actually seized, in violation of Washington law. Rec. Doc. 3 at ¶ 64. Apparently, Plaintiffs' lawyers argued in the Louisiana case that the stock certificates did not have to be physically seized; rather, they could be effectively seized by giving notice to a corporate officer. *Id.* at ¶¶ 72-79.

[3] Defendants fail to explain these claims. Article 2652 does not prohibit this type of transaction; the article merely provides the obligated party a right of redemption based on the price of the assignment.

[4] In both the notice of removal and their opposition memorandum, Defendants note that "[a]fter November 5, 2015 (when the Sale of Litigious Rights was executed) no *caption* of any pleading filed in the Soap Case showed that the pleading was filed by ' . . . Joesph Todesco, as assignee of LAG . . . ', another instance of sharp and deceptive practices. On the other hand, all captions in the November 24, 2015 King County case show the filing and moving party as ' . . . Joseph E. Todesco, assignee of Louis Glass Inc. . . . .'" First, it is unclear how these allegations relate to this Court's subject matter jurisdiction. Second, the caption in a case does not necessarily change—even if the parties change. Consequently, the Court finds these baseless allegations of "deceptive practices" without merit. Defendants also allege in the notice of removal that the Washington State attorneys involved may be held liable because of "their oral misrepresentations to all three district courts and . . . their active participation in the scheme to deprive the Wainright interests of their security rights in Haelan," as provided in *Junker v. Crory*, 650 F.2d 1349, 1360 (5th Cir. 1981). Rec. Doc. 3 at ¶¶ 40-41. Defendants do not allege that the attorneyes violated Washington State law or otherwise circumvented Washington State procedures, so the Court fails to see how these attorneys behaved inappropriately or how such allegations could possibly relate to this Court's jurisdiction.

argue that because the Louisiana state court judgment was obtained by "fraud and ill-practices," it is null under Louisiana Code of Civil Procedure article 2004 and should be declared null by this Court. *Id.* at ¶¶ 37, 80.

## II.  __THE PARTIES' CONTENTIONS__

In their motion to remand, Plaintiffs maintain that (1) Defendants failed to timely remove this action and (2) there is no basis for federal question or diversity jurisdiction. Rec. Doc. 8 at 2. They also request attorney's fees because there was no reasonable basis for removal. Rec. Doc. 8-1 at 21.

Defendants' opposition memorandum largely reflects the arguments made in their notice of removal. Rec. Doc. 18.

## III. __LAW AND ANALYSIS__

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district . . . embracing the place where such action is pending." 28 U.S.C. § 1441(a). However, "[t]he removing party bears the burden of establishing that federal jurisdiction exists" (*De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995) (citing *Gaitor v. Peninsular & Occidental S. S. Co.*, 287 F.2d 252, 253 (5th Cir. 1961))), and "[a]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand" (*Manguno v. Prudential*

*Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000))).

**A. WAS THE REMOVAL TIMELY?**

"The notice of removal . . . shall be filed within 30 days after the receipt by the defendant . . . of a copy of the initial pleading . . . ." 28 U.S.C. § 1446(b)(1). However,

> if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable.

§ 1446(b)(3). Nonetheless, when the basis for removal is diversity jurisdiction under § 1332, a case may not be removed "more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." § 1446(c)(1).

In this case, the original Louisiana state court petition was filed on June 18, 2014. Rec. Doc. 3-1 at 2. Defendants admit that the matter was not originally subject to removal. Rec. Doc. 3 at ¶ 3 ("Before the judgment in the Removed Case was rendered, this case was not removable on its face for lack of complete diversity"). On September 8, 2016, Plaintiffs filed an exception of no right of action. Rec. Doc. 3-2 at 9. The memorandum in support of the exception detailed all of the facts related to the assignment of litigious rights that Defendants contend is null for

various reasons. *Id.* at 12-16. According to Plaintiffs, Defendants filed a response to the exception on September 21, 2016, arguing that federal securities fraud law applied to Plaintiffs' actions. Rec. Doc. 8-1 at 7. Nonetheless, after a hearing, the state court judge granted the exception on September 26, 2016. *Id.* The judgment rendered on that day was reduced to writing on October 27, 2016. *Id.* Defendants purportedly received a copy of this judgment on November 2, 2016. Rec. Doc. 3 at ¶ 7. Yet, it was not until November 30, 2016 that Defendants filed the notice of removal in this Court. *Id.*[5]

Plaintiffs argue that Defendants had to remove the case within one year after the suit was commenced on June 18, 2014 or within one year of receipt of the filing by which it could first be ascertained that the case was removable. Rec. Doc. 8-1 at 8-9. Alternatively, Plaintiffs argue that Defendants failed to remove the case within the thirty-day deadline provided in § 1446(b)(1), because the supposed basis for removal was revealed in Plaintiffs' September 8, 2016 exception and accompanying memorandum and acknowledged by Defendants in their September 21, 2016 filings. *Id.* at 11-12.

---

[5] Defendants originally filed a notice of removal on November 30, 2016. Rec. Doc. 1. However, the notice was marked deficient and Defendants were given until December 9, 2016 to cure the deficiencies. Defendants re-filed a cured notice of removal on December 9, 2016. Rec. Doc. 3.

Defendants claim that they timely removed the case within thirty days of their receipt of the state court's judgment on November 2, 2016. Rec. Doc. 3 at ¶ 7; *see also* Rec. Doc. 18 at 3. Further, Defendants argue that the one-year time period should be equitably tolled. Rec. Doc. 18 at 1 (citing *Tedford v. Warner-Lambert Co.*, 327 F.3d 423 (5th Cir. 2003); *Baby Oil, Inc. v. Cedyco Corp.*, 654 F. Supp. 2d 508, 517 (E.D. La. 2009)).

First, the parties misunderstand the applicable rule. There is a one-year time limit when the basis for removal is diversity jurisdiction under 28 U.S.C. § 1332. Here, however, Defendants argue that this Court maintains federal question jurisdiction under § 1331. Therefore, the one-year time limit in § 1446(c)(1) is irrelevant.

Second, the Court agrees with Plaintiffs that the removal was not timely filed within thirty days of receipt of some paper from which it could first be ascertained that the case was removable. This Court lacks subject matter jurisdiction, as is discussed in greater detail below, but the alleged basis for this Court's subject matter jurisdiction was known to Defendants on September 26, 2016, when they filed a motion in the state court arguing that the sale of litigious rights is prohibited under Louisiana law and that the Washington State process violated Glenda Wainright's due process rights. Rec. Doc. 3-2 at 60-61. The state court made its ruling on September 26, 2016 and signed a judgment on October 27,

2016. *Id.* at 70. Yet, Defendants waited until November 30, 2016 to attempt to remove the case.

Nonetheless, Defendants now argue that the deadline should be equitably tolled. In *Tedford*, the Fifth Circuit recognized that "[s]trict application of the one-year limit would encourage plaintiffs to join nondiverse defendants for 366 days simply to avoid federal court, thereby undermining the very purpose of diversity jurisdiction." 327 F.3d at 427. Because the purpose of the one-year limit was to "reduc[e] opportunity for removal after substantial progress has been made in state court" and "forum manipulation justifies application of an equitable exception in the form of estoppel," the Fifth Circuit held that "[w]here a plaintiff has attempted to manipulate the statutory rules for determining federal removal jurisdiction, thereby preventing the defendant from exercising its rights, equity may require that the one-year limit in § 1446[c] be extended." *Id.* at 427, 429.

In *Baby Oil*, the district court recognized the exception announced in *Tedford*, but noted that it must be balanced "with the general rule that removal jurisdiction is to be strictly construed, as its application 'deprives a state court of a case properly before it and thereby implicates important federalism concerns.'" 654 F. Supp. 2d at 517. In that case, substantial progress was made in the state court (motions to compel and for summary judgment were pending at the time of removal) and the defendant was not

vigilant in asserting its removal rights (after attempting to remove in 2005, the defendant waited three years to conduct discovery that would have revealed that the case was removable). *Id.* Because "the Plaintiffs did not engage in blatant forum manipulation, [the defendant] did not vigilantly assert is removal rights, and [the] action ha[d] already made substantial progress in state court, [the] case [was] not subject to the *Tedford* equitable exception of estoppel." *Id.*

Here, Plaintiffs argue that Defendants "have stated nothing in their argument that amounts to any forum manipulation by the Todescos, much less, blatant forum manipulation." Rec. Doc. 23 at 3. Quite simply, the Court agrees with Plaintiffs. Defendants allege that the Washington State attorreys engaged in misconduct and various "deceptive practices," but they fail to allege that Plaintiffs in the instant case engaged in forum manipulation or otherwise prevented Defendants from exercising their right to remove the case to federal court. Rather, Defendants admit that when the case was initially filed, there was no basis for federal jurisdiction. Defendants are not entitled to the benefits of the exception recognized in *Tedford*.[6]

Defendants also argue that the thirty-day clock did not begin to run until they received a copy of the state court judgment on

---

[6] For the purposes of the pending motion, the Court assumed that the *Tedford* exception could be used to equitably toll the thirty-day deadline provided by § 1446(b).

November 2, 2016. This judgment is a one-page document that simply provides that Plaintiffs' exception of no right of action is granted "for reasons orally assigned." Rec. Doc. 3-2 at 70. Nothing in the document itself suggests that the case was suddenly removable. To the contrary, it appears to this Court that Defendants simply did not like the outcome and were resigned to manufacture a basis for removal in an attempt to find a court that would reach a different conclusion. If the state court judgment was deficient in some way, Defendants should have appealed. As it stands, however, they failed to timely remove the case.

### B. DOES THIS COURT HAVE SUBJECT MATTER JURISDICTION?

Even if the notice of removal was timely filed, there is no basis for federal jurisdiction. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Pursuant to the well-pleaded complaint rule, an action ''arises under' federal law 'only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law].'" *Hogan v. Williams*, No. 17-3, 2017 WL 710414, at *2 (E.D. La. Feb. 22, 2017) (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (quoting *Louisville v. Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908))). This rule essentially "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded

complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted). This generally means that the "plaintiff pleads a cause of action created by federal law." *Riehm v. Wood Res., LLC*, No. 16-12747, 2016 WL 6123372, at *2 (E.D. La. Oct. 20, 2016) (citing *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005)). However, it may also mean that "a plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law." *Riehm*, 2016 WL 6123372, at *2 (citing *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013); *Thompson v. Hous. Auth. Of New Orleans*, No. 16-11856, 2016 WL 4976446, at *3 (E.D. La. Sept. 19, 2016)). "That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065. **"As a corollary, 'anticipated or potential defenses, including defenses based on federal preemption, do not provide a basis for federal question jurisdiction.'"** *Google, Inc. v. Hood*, 822 F.3d 212, 221 (5th Cir. 2016) (quoting *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 328 (5th Cir. 2008)) (Emphasis added).

Nonetheless, "where the original complaint presents no grounds for removal, a defendant may later remove the case to federal court after receipt of 'an amended pleading, motion, order or other paper from which it may first be ascertained that the

case is one which is or has become removable.'" *Eggert v. Britton*, 223 F. App'x 394, 396 (5th Cir. 2007) (citing § 1446(b)) (emphasis removed). "In most cases, when courts look to 'other paper' to ascertain removability, courts are clarifying that diversity jurisdiction has been established." *Id.* at 397. "Under limited circumstances, courts have looked to 'other paper' to establish federal question jurisdiction, such as to clarify that a plaintiff's state law claim is one that would be preempted by federal law." *Id.*

Here, Defendants assert that some paper revealed that the case was removable based on federal question jurisdiction. From the notice of removal, it appears that Defendants claim that this Court maintains federal question jurisdiction because of allegations of security fraud and due process violations that became apparent when the state court judge ruled against Defendants in September or October of 2016. Rec. Doc. 3 at ¶ 9; *see also* Rec. Doc. 18 at 3. Defendants also note that this Court would have "exclusive jurisdiction if this case was filed anew pursuant to § 27 of the 1934 Exchange Act . . . ." Rec. Doc. 18 at 3 (citing 15 U.S.C. § 78aa(a)).

As to the due process argument, Defendants maintain that because Glenda Wainright did not receive prompt notice that the litigious rights were assigned to Todesco, Plaintiffs (and apparently Washington State) violated Glenda Wainright's notice

15

rights under *Mennonite*. *Id.* at 9-10. Defendants thus conclude "[u]nder the totality of the circumstances, the Jefferson Parish judgment is a nullity pursuant to Louisiana Code of Civil Procedure Article 2004 as having been obtained by ' . . . fraud and ill-practices . . . ' [and] the Soap Case . . . is subject to the right of litigious redemption." *Id.* at 10.

Plaintiffs respond that Defendants failed to argue the unconstitutionality of any Washington or Louisiana law regarding notice—rendering the Supreme Court's due process decision in *Mennonite* irrelevant. Rec. Doc. 8-1 at 20. According to Plaintiffs, Todesco followed Washington law when he purchased the creditor rights and subsequently pursued Defendants' Haelan stock in a Washington court. *Id.* Ultimately, Plaintiffs maintain that Defendants' "arguments relate to nothing more than alleged procedural deficiencies in a state court proceeding upon which the state court in the 24th Judicial District Court for the Parish of Jefferson has already rendered judgment." *Id.* at 21.[7]

---

[7] Plaintiffs also argue that (1) Defendants' requests for relief in the notice of removal (namely seeking declarations that the state court judgment is null and that Glenda Wainright may exercise her right of litigious redemption, as well as for the appointment of a receiver or liquidator), are "entrenched in state substantive law . . . " (Rec. Doc. 8-1 at 14); and (2) none of the pleadings filed in the state court provide a basis for federal jurisdiction (*id.* at 16-17 (citing Rec. Doc. 3-1 at 2-20 (the original petition alleging fraud, misappropriation, and breach of fiduciary duties); at 29-50 (Defendants' reconventional demand); at 51-65 (the answer to the reconventional demand); Rec. Doc. 3-2 at 9-20 (Plaintiffs' exception of no right of action); at 23-50 (Defendants' supplements to their earlier memoranda); at 60-68 (Defendants' motion in limine arguing that the assignment of litigious rights was invalid under Louisiana law).

Defendants spend a great deal of time in both their notice of removal and opposition memorandum detailing the sale of litigious rights in Washington State. *See* Rec. Doc. 3 at ¶¶ 10-28; Rec. Doc. 18 at 4-7. Under Louisiana law, "[w]hen a litigious right is assigned, the debtor may extinguish his obligation by paying to the assignee the price the assignee paid for the assignment, with interest from the time of the assignment." LA. CIV. CODE ANN. art. 2652. Defendants have pointed to no law that prohibits the sale of litigious rights. Instead, they appear to argue that they should be able to extinguish their obligation to Plaintiffs by paying the price of the assignment. First, it is entirely unclear to the Court how any argument about the validity and consequences of this assignment is related to the issue of federal jurisdiction. As far as this Court can tell from the documents filed in the Louisiana state court, Plaintiffs followed proper procedures under Washington State law to obtain the storage unit owner's judgment creditor's rights and subsequently enforce those rights. Defendants allege due process violations in a conclusory manner, failing to cite the supposedly unconstitutional procedure. At best, Defendants' due process argument and any other argument regarding the validity of the sale of litigious rights are defenses to Plaintiffs' claims and therefore would not confer subject matter jurisdiction under the well-pleaded complaint rule. Second, the assignment was made in Washington State and thus is presumably

subject to Washington, not Louisiana, law. Defendants fail to explain why article 2652 should apply to this transaction or why the application of article 2652 must be sought in federal court. Third, prior to removal, Defendants apparently made this argument in the state court—where it was dismissed. *See* Rec. Doc. 23 at 4; See also *Google, Inc. v. Hood, supra,* (Removal unavailing for purposes of asserting defenses).

As to Defendants' assertion that this Court maintains jurisdiction by virtue of the 1934 Exchange Act, Plaintiffs respond that if these claims are raised in a state court and then sought to be removed, the federal court cannot exercise removal jurisdiction because the state court never had jurisdiction. Rec. Doc. 8-1 at 18-19 (citing *Shorty v. Top Rank of La., Inc.*, 876 F. Supp. 838, 840 (E.D. La. 1995) ("The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction . . . the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction. There being no state court jurisdiction over the 1934 Act claim, this Court has no removal jurisdiction over that claim") (citations and quotation marks omitted); *Weeks v. Fid. & Cas. Co. of N.Y.*, 218 F.2d 503, 504 (5th Cir. 1955) ("The case removed must be one within the jurisdiction of both the court from which, and the court to which, it is removed. If the state court has no jurisdiction, the federal court acquires none") (citation omitted); *Lambert Run Coal Co. v. Baltimore &*

*O.R. Co.*, 258 U.S. 377, 382 (1922); *Bee Mach. Co. v. Freeman*, 131 F.2d 190, 194 (1st Cir. 1942), *aff'd,* 319 U.S. 448 (1943).

However, Congress amended the removal statute in 1986 and 2002. Section 1441(f) now provides that "[t]he court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim." *See also Budget Prepay Inc. v. Qwest Commc'ns Co. L.L.C.*, No. 09-149, 2009 WL 1604995, at *1 n.3 (W.D. La. June 8, 2009).

Nonetheless, Defendants did not address this argument in their opposition memorandum. Thus, this Court is left with Defendants' conclusory statement that if this case were filed today, it would be filed pursuant to the 1934 Exchange Act and this Court would have exclusive jurisdiction. However, the Act is not included in the original petition and Defendants fail to argue that the petition necessarily raises a federal issue governed by the Act that is actually disputed, substantial, and capable of resolution in federal court without disrupting the delicate federal-state balance. The petition asserts fraud and breach of fiduciary duties, both state law actions. Further, Defendants do not explain how the filing of this petition today would necessarily raise claims under the Act. Granted, the petition was originally filed in state court before the allegedly offensive proceedings in

Washington took place—but that merely suggests that the allegations made in the petition have nothing to do with the Washington litigation. Because the Act was not part of the well-pleaded complaint, we find that the 1934 Exchange Act does not confer subject matter jurisdiction over the instant dispute.

It was Defendants' burden to establish that federal jurisdiction exists (*De Aguilar*, 47 F.3d at 1408) and they failed to satisfy that burden. Instead, the Court agrees with Plaintiffs' assessment of the instant removal: after Defendants' arguments were made and rejected in the state court, they "intentionally misused this removal procedure in an attempt 'to take another bite at the apple.'" Rec. Doc. 23 at 2.

### C. ARE PLAINTIFFS ENTITLED TO ATTORNEY'S FEES?

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). It is within the court's discretion to award fees, but the court should "recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Darville v. Tidewater Marine Serv., Inc.*, No. 15-6441, 2016 WL 1402837, at *9 (E.D. La. Apr. 11, 2016) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005)). Thus, "the

standard for awarding fees should turn on the reasonableness of the removal" and "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin*, 546 U.S. at 141. *See also Daigle v. Assumption Par. Policy Jury*, No. 14-1437, 2014 WL 6836130, at *1 (E.D. La. Dec. 2, 2014) (awarding fees where the plaintiff/counterclaim defendant removed the case, even though "decades of jurisprudence have established that a counterclaim defendant may not remove a case" and the counterclaim defendant cited no case law to support his position); *Tubre v. Auto. Club of Mo.*, No. 14-771, 2014 WL 2979379, at *4 (E.D. La. June 30, 2014) (awarding fees where the removing party "disregarded the appropriate standard for improper joinder and instead relied upon inapplicable case law"); *Brennan v. Brennan's, Inc.*, No. 13-4848, 2013 WL 4547141, at *4 (E.D. La. Aug. 27, 2013) (awarding fees given "the corporation's blatant disregard for controlling precedent and its intentionally vague arguments regarding issues that were not pending in state court before the case was removed, but which the corporation feared could come up if the case remained in state court").

There was no objectively reasonable basis to seek removal in this case. Defendants offered conclusory allegations of securities fraud and due process violations—arguments that were previously made before and rejected by the state court. Defendants did not

even explain that they sought removal under § 1331 or recite any of the case law regarding the appropriate standard for removal or finding subject matter jurisdiction. Consequently, Plaintiffs are entitled to payment of costs and fees under § 1447(c).

**IV.** **CONCLUSION**

For the reasons given above,

**IT IS ORDERED** that the motion to remand (Rec. Doc. 8) is **GRANTED**;

**IT IS FURTHER ORDERED** that because Defendants failed to respond to Plaintiffs' detailed motion for attorney's fees and costs, Defendants effectively waived defenses to that part of the motion. Further, considering the reasonableness of the fees and costs expended and now sought, along with the basis for awarding fees under 28 U.S.C. § 1447(c), that part of the motion seeking payment of fees and costs is **GRANTED**; and

**IT IS FURTHER ORDERED** that the motion for leave (Rec. Doc. 24) is **DISMISSED AS MOOT.**

New Orleans, Louisiana, this 14th day of April, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE